KIRBY et ux. v. MORRIS. (No. 8705.)

(Court of Civil Appeals of Texas. Ft. Worth. July 2, 1917. On Motion for Rehearing, Oct. 20, 1917.)

1. PARENT AND CHILD ⬤⟳2(4)—CUSTODY OF CHILD—VISITING — AUTHORITY OF DISTRICT COURT.

The district court, in suit over the custody, care, and control of minor children by the maternal grandmother against the grandaunt, has authority to require the adoptive parents of a little girl, the grandaunt and her husband, to allow the child to visit in the home of her grandmother, where she might see her brothers and sister.

2. PARENT AND CHILD ⬤⟳2(4)—CUSTODY OF CHILD—APPEAL—PRESUMPTION.

On appeal in suit over the custody of children, the Court of Civil Appeals must presume that the grandmother, to whom custody of some of the children is awarded, with right to have the other visit her for a day once a month, will obey the court's injunction to refrain from any efforts to prejudice the mind of the visiting child against her grandaunt and latter's husband, awarded her custody.

3. PARENT AND CHILD ⬤⟳2(3)—CUSTODY OF CHILDREN—INTEREST.

In controversies over the custody and guardianship of children, the custody will be awarded with reference to the interests of the children as the controlling consideration.

On Motion for Rehearing.

4. APPEAL AND ERROR ⬤⟳437—ENFORCEMENT AFTER APPEAL BY PROCESS FROM TRIAL COURT—APPEAL ON BOND FOR COSTS—STATUTE.

The judgment of the trial court, under Vernon's Sayles' Ann. Civ. St. 1914, art. 2100, never having been suspended upon appeal, which was prosecuted on bond for costs only, and not on supersedeas bond, it can be enforced, notwithstanding the appeal, by proper process issued from the trial court.

Appeal from District Court, Denton County; C. F. Spencer, Judge.

Suit by Mrs. R. J. Morris against J. O. Hussey, P. Kirby, and Sallie Kirby, his wife. From a portion of the judgment, Kirby and wife appeal. Affirmed.

Sullivan & Hill and Luther Hoffman, all of Denton, for appellants. E. I. Key, of Denton, for appellee.

DUNKLIN, J. This is a controversy over the custody of three minor children, Ray Hussey, a boy about eight years of age, Kenneth Hussey, a boy about five years of age, and Jewell Geneva Hussey, a girl about three years of age. Mrs. Samuel Teresa Hussey, the mother of the children, having died, her mother, Mrs. R. J. Morris, instituted this suit against J. O. Hussey, the father of the children, and P. Kirby and Sallie Kirby, seeking a decree of court awarding the custody, care, and control of said children to her. Mrs. Sallie Kirby is the aunt of J. O. Hussey, and hence the grandaunt of the children.

On February 9, 1916, J. O. Hussey, by an instrument in writing duly signed and acknowledged as deeds are required to be, transferred his parental authority and cus-

tody over Geneva Hussey to defendants P. Kirby and his wife, Sallie Kirby, as provided in article 3, 1 Vernon's Sayles' Texas Civil Statutes, and on the same day P. Kirby and wife executed an instrument in writing, which was duly asknowledged as deeds are required to be, by the terms of which they adopted Geneva Hussey as their legal heir, as provided by article 1, Vernon's Sayles' Texas Civil Statutes. Both of said instruments were duly filed and recorded.

Mr. and Mrs. Kirby claimed custody of Geneva Hussey only, and based their claim upon the deed of adoption and the transfer to them by J. O. Hussey of his parental authority and custody over said child referred to above.

The case was tried by the court without the aid of a jury, and by the judgment rendered the custody of the two boys mentioned was awarded to plaintiff, Mrs. R. J. Morris, while the custody of Geneva Hussey was awarded to Mr. and Mrs. Kirby. The judgment contains the following provisions:

"The court further finds and is of the opinion that the minor daughter of Ollie Hussey and his deceased wife should be left in care and custody of her adopted parents, Mr. and Mrs. P. Kirby; the court being of the opinion that it is for the best interest of said minor child that she be so left.

"The court is of the further opinion, however, that it is for the best interest of said minor daughter that she should spend at least one day out of each month with her little brothers and grandmother at the home of her said grandmother, and to this end the court finds that it is proper that Mrs. P. Kirby permit said minor daughter to make such visits at such time, and the court is of the opinion that the first Saturday in each month is a proper day for said minor daughter to spend with her little brothers and grandmother, and that she should be delivered to said Mrs. Morris in person at the home of the said Mrs. Kirby at 9 o'clock a. m., and returned by the said Mrs. Morris not later than 6 o'clock p. m. on the first Saturday of each month.

"The court is further of the opinion that all of the parties hereto should teach all of said children to have proper respect for the other parties hereto, and that neither of them should teach any of said children to dislike or have a distaste for the others. * * *

"It is further ordered, adjudged, and decreed that the said minor daughter now with Mr. and Mrs. P. Kirby shall be delivered by them to Mrs. R. J. Morris on the first Saturday in each month at 9 o'clock a. m. for the purpose of being taken by the said Mrs. Morris, who shall return said minor daughter to the home of Mr. and Mrs. P. Kirby not later than 6 o'clock p. m. on said day."

In plaintiff's petition she also asked for the custody of another child, a girl aged about ten months, who is also the daughter of Samuel Teresa Hussey. The decree of court fails to make any disposition of the custody of this child. We presume that this failure was due to the fact that we find in the record the testimony of Mrs. Morris to the effect that she had already adopted this child, and we suppose that such adoption was in accordance with the statutes, and that J. O. Hussey

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had transferred to Mrs. Morris his parental authority over that child.

J. O. Hussey, the father of the children, has not prosecuted any appeal from the judgment, but Mr. and Mrs. Kirby have appealed from that portion of the judgment requiring visits by Geneva Hussey to her grandmother and brothers and little sister one day out of each month.

In the findings of fact filed by the trial judge the following appears:

"I find that the best interests of Ray and Kenneth will be subserved by placing them with their grandmother, Mrs. Morris, plaintiff herein, who is very desirous of having the custody and rearing of said two boys, she having the infant triplet.

"I find that she is amply able (financially and morally) to raise and care for and properly educate and keep and maintain said Ray and Kenneth. * * *

"I also find that Mr. and Mrs. P. Kirby are good people, and are well qualified from every standpoint (financially and morally) to rear and care for and educate said Geneva Hussey, and that they are anxious and willing to do so and that it is for the best interest of said child that they be permitted to do so.

"I also find that it is for the best interest of said Geneva that she be permitted to spend at least one day of the month with her little brothers and grandmother at the grandmother's home, where her said little brothers will be kept, as I find that the best interest of the said Geneva will be subserved by permitting her the association of her grandmother, Mrs. Robert Morris, and her little brothers at the home of the said Mrs. Morris."

In his conclusions of law the trial judge held that he had authority to require such visits by the child under the decision of our Supreme Court in Legate v. Legate, 87 Tex. 248, 28 S. W. 281.

No attack has been made by appellants upon the trial court's findings of fact, and the only assignment of error presented by them reads as follows:

"The court erred in finding as a matter of law that the court had authority to divide or limit the parental authority of the adopted parents, P. Kirby and wife, Sallie Kirby, and to permit the child Geneva Hussey to spend one day out of each month with Mrs. R. J. Morris, appellee."

The case of Legate v. Legate, supra, was a suit by the parents to recover custody of an infant from one to whom they had voluntarily relinquished such custody and who had legally adopted the child. In that case our Supreme Court announced the rule that in such controversies the paramount and controlling issue to which all others must be subordinated is: What is the best interest of the child? In the opinion the following was said:

"The state, as the protector and promoter of the peace and prosperity of organized society, is interested in the proper education and maintenance of the child, to the end that it may become a useful instead of a vicious citizen; and while as a general rule it recognizes the fact that the interest of the child and society is best promoted by leaving its education and maintenance, during minority, to the promptings of paternal affection, untrammeled by the surveillance of government, still it has the right in proper cases to deprive the parent of the custody of his child when demanded by the interests of the child and society."

And after referring to the transfer of parental custody of the child to the foster parent who had adopted her and was in every respect qualified to care and provide for her, and after holding that the contract between the parties could not be enforced as such because neither the child not its custody was a subject-matter of contract, the court said further:

"The parents, on the one hand, offer to take back their child to the family circle, from whence they voluntarily allowed it to be taken nearly two years since, at the tender age of three months; and, on the other hand, its foster parents insist upon its remaining, with all the privileges of an adopted child, in the home where it has been tenderly and lovingly cared for through the critical period of infancy. Two homes are thus offered the child, who is in no wise responsible for this unfortunate controversy, and has not sufficient discretion to select. We hold, as a matter of law, that it is entitled to the benefit of that home and environments which will probably best promote the interest of the infant. The question as to whose custody will be most beneficial to the infant is one of fact of which this court has no jurisdiction, but which is to be determined in the first instance by the district court upon hearing all the evidence tending to shed any light upon these two homes and the people inhabiting them, including their entire connection with, affection for, and present and future ability to care and provide for this little girl, in order that the court may be able to determine upon the whole case the difficult question of fact above stated."

To the same effect are State v. Deaton, 93 Tex. 243, 54 S. W. 901, Noble v. Noble, 185 S. W. 318, Ex parte Reeves, 100 Tex. 617, 103 S. W. 478, and many other cases which might be cited. In Ex parte Reeves, just cited, our Supreme Court said:

"Under the common law and equity system of England which was adopted in Texas as early as 1840 the courts of chancery exercised jurisdiction to appoint guardians for minors and to supervise their conduct with reference to the persons and estates of their wards. 3 Pomeroy's Equity (3d Ed.) § 1303 et seq. In section 1307 the same author says: 'In addition to its power to appoint guardians, the court of equity will also exercise its jurisdiction, in a proper case, and to promote the highest welfare of the infant, where there is already a guardian, natural or legal, by controlling the person of the infant, and by removing it personally from the custody of its natural or legal guardian, even from the custody of its own parents.' That this latter jurisdiction may be lawfully exercised by the district courts of this state is held in Legate v. Legate, 87 Tex. 248 [28 S. W. 281], and in other cases which need not be cited."

Article 7 of our statutes, which was enacted since the rendition of the leading decision of Legate v. Legate, supra, and others which have followed it, reads as follows:

"Nothing in this article shall prevent a court of competent jurisdiction from taking away from such adoptive parent the custody of the adopted child and awarding the same to its natural parents, or either of them, or to any other person, upon proof of the bad moral character of such adoptive parent, or upon proof of abuse, neglect, or ill treatment of such adopted child by the adoptive parent."

[1, 2] Appellants insist that article 7 implies a denial to courts of authority to deprive the adoptive parent of the custody of the adopted child for any reason except those specified in that article. None of our statutes purports to change the rule of decisions theretofore established in so far as applicable to the question of custody of a child by his natural parents, and it would be unreasonable to conclude that by article 7 of the statutes the Legislature intended to give to the adoptive parent a right of custody superior to that of the natural parent. We are inclined to think that conditions might exist aside from those mentioned in article 7 which would lead to the conclusion that the welfare of a child would be best subserved by transferring its custody from the adoptive parent to another; but a decision of that question in the present case is unnecessary, because: First, to require the adoptive parents to allow the child to visit in the home of her grandmother in no sense deprives appellants of the custody of the child. Such provisions are often made in cases of like character, and the authority of the court to so decree is well settled. Ex parte Ellerd, 71 Tex. Cr. R. 285, 158 S. W. 1145, Ann. Cas. 1916D, 361. Second, it is too plain for argument that the welfare and happiness of the child Geneva Hussey will be materially advanced by association with her brothers, little sister, and grandmother, especially if the grandmother obeys, as we must presume she will do, the court's injunction to refrain from any efforts to prejudice the mind of the child against her foster parents. Nor has the finding of the court to that effect, as a matter of fact, been questioned by appellants by any assignment. And the refusal of appellants to permit such visits by the child, or to permit such visits to the child by her grandmother, as shown by the evidence, would be a neglect of the welfare of the child within the meaning of article 7 of the statutes.

Appellants have cited the decision of the Supreme Court of Louisiana in Re Succession of Louise Marie Reiss, 46 La. Ann. 347, 15 South. 151, reported in 25 L. R. A. 798, in which it was held that the court had no authority to require the father of his children whose mother was dead to send the children to visit their grandmother. It appears that the objections on the part of the father to such requirement were based solely upon personal differences and incompatibilities between the father and grandmother of the children, and the children were of the tender age of six and eight years. In the opinion the court states that the question involved was one of first impression in the state of Louisiana. Reference is made to the Civil Code of France, with the remark that it is similar to the Code of Louisiana upon the subject, and, after referring to the conflict in the authorities upon the subject, the court uses the following language:

"We refer approvingly to the French authorities only so far as they lay down the principles that it is not a vinculum juris, and that the obligation ordinarily to visit parents is moral and not legal. There may be cases of downright wrong and inhumanity demanding judicial intervention, even to the extent of dismissing the father and tutor from his trust. The case at bar does not disclose so grave an issue. Ill feeling and bad blood separate the father and grandmother. The former admits the respect due the latter by the children. The ties of nature will prove more efficacious in restoring kindly family relations than the coercive measures which must follow judicial intervention."

[3] In a note to that decision it is stated that the decision is the first of its kind in this country, and following that statement is the further statement of the general rule prevailing that the custody of children will be awarded with reference to the interest of the children as the controlling consideration, and numerous authorities are cited which announce the rule same as announced in the decisions of our own state, which latter decisions we consider binding upon this court, and which we believe to be sound in principle. Accordingly appellants' assignment of error noted above is overruled.

Appellee, Mrs. Morris, has filed a cross-assignment of error to the action of the court in refusing to award the custody of Geneva Hussey to her grandmother instead of to appellants, P. Kirby and wife. By another cross-assignment it is insisted that at all events the trial judge should have allowed Geneva Hussey the privilege of visiting in her grandmother's home at least once a week, and appellee asks that the decree of the trial court should be so reformed as to allow these additional visits, in the event the first cross-assignment of error should be overruled.

As the trial judge had all the witnesses before him, we feel unable to disturb his decision upon either of the questions presented in the two cross-assignments of error, although it seems to us that the facts would have justified a finding requiring more frequent visits than required by the court's decree. It appears from appellants' brief that their personal animosity towards the grandmother alone forms the only basis for their objections to visits by Geneva Hussey to her grandmother and brothers and sister. It is not contended that any harm will result to the child from such visits, and it is difficult for us to reconcile the decision of the adoptive parents to deny such visits altogether with the love and affection which they assert for the child, and their alleged interest in the child's welfare. It is to be noted that the trial court did not find that the welfare of the child would not be subserved by more frequent visits, but his findings are to the effect that the visits should be at least once a month. The decision is in no sense res adjudicata upon the child, herself, and will be no bar to a requirement for more frequent visits in the future, if the conditions should

change, or if, for any reason, within the opinion of the court, the welfare of the child would be promoted by more frequent visits. Accordingly the appellee's cross-assignments will be overruled, but we deem it not amiss to suggest in the interest of the child, who is in no manner responsible for these unfortunate animosities between appellants and appellee, that the record suggests no reason why the parties could not forego such personal differences for the sake of the child alone, if not for other reasons, since both parties manifest deep interest in the child's welfare.

The judgment with respect to the custody of Geneva Hussey is affirmed. The judgment in favor of Mrs. Morris against J. O. Hussey for the custody of the other two children, of which no complaint is made, is undisturbed.

### On Motion for Rehearing.

This appeal was prosecuted not on a supersedeas bond, but on a bond for costs only. By article 2100, V. S. Tex. Civ. Stat., it is expressly provided that, when an appeal or writ of error is prosecuted solely upon such a bond, and not upon a supersedeas bond, the same shall not have the effect to suspend the judgment, but execution shall issue thereon as if no such appeal or writ of error had been taken.

[4] As the judgment of the trial court has never been suspended, the same can be enforced, notwithstanding the appeal by proper process issued from the trial court. Accordingly appellee's motion for the issuance of such process from this court is overruled.

Appellants' motion for rehearing likewise is overruled.